**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2011
Decided March 9, 2011

By the Court:

No. 10-1317

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 07 CR 403-1 |
| CHARLES ZOHFELD, | |
| *Defendant-Appellant.* | Milton I. Shadur, |
| | *Judge.* |

## O R D E R

Charles Zohfeld appeals the 18-month term of reimprisonment that the district court imposed on him after revoking his term of supervised release. He argues that the length of the term of reimprisonment is plainly unreasonable. We affirm.

Relevant facts underlying Zohfeld's conviction are summarized in *United States v. Zohfeld*, 595 F.3d 740, 741-42 (7th Cir. 2010). In May 2005 Zohfeld was rushed to the emergency room after suffering an apparent heart attack. A cardiac surgeon performed life-saving open heart surgery and implanted a pacemaker. Zohfeld recovered successfully, but soon began to harass and threaten the surgeon and his staff—making repeated threatening phone calls, appearing at the clinic without appointments, and monitoring the surgeon's family's whereabouts. On one phone call, he said, "I have been able to buy a Beretta 9-millimeter handgun and I will bring it by for [the surgeon] to see." *Id.* at 741-42. On another call, he stated that he had been "practicing with my 9-millimeter handgun . . . . You really should consider taking out the stuff you put into me. I was the wrong person to stick a knife into. Got that?" *Id.* at 742. Eventually the surgeon relocated his practice and family

from Illinois to California. But Zohfeld again appeared at the surgeon's California medical office, and the threats continued.

Zohfeld was arrested and pleaded guilty to two counts of making threatening phone calls in violation of 18 U.S.C. § 875(c). The district court sentenced him to two years' imprisonment followed by three years' supervised release, to run concurrently for both counts. The court instructed Zohfeld, who had been diagnosed with delusional disorder, to undergo treatment during his incarceration. Zohfeld appealed his sentence, and this court affirmed. *Id.* at 743-44.

After his release from custody, Zohfeld followed the probation office's directive and enrolled in a mental-health treatment program—a condition of his supervised release. The probation office referred him initially to the local treatment center. The therapist there reported that Zohfeld was hostile, intimidating, and highly resistant to treatment, "akin to how he had previously presented for treatment prior to his sentencing," and the center refused to work with him any further. The probation office then referred him to another mental-health center, where he was diagnosed with delusional disorder, persecutory type, and paranoid personality disorder. The psychiatrist described Zohfeld as resistant to treatment. The probation office ordered Zohfeld to attend semimonthly individual counseling sessions, but the center later discharged Zohfeld, citing his "repeated inappropriate/offensive comments, resistance related to completing paperwork required by the agency and U.S. Probation Office, and a negative attitude towards counseling and related interventions."

The probation officer petitioned the district court to revoke Zohfeld's supervised release, explaining that he violated its terms by refusing to undergo mental-health treatment. Zohfeld admitted to this violation, and a hearing on the revocation of supervised release was held. At the hearing, the parties agreed that Zohfeld's delusional and personality disorders contributed to his persistent refusal to accept mental-health treatment, but they disagreed about the appropriate term of reimprisonment. Defense counsel sought a three- to six-month term of reimprisonment followed by another period of supervised release, whereas the government and probation officer urged the court to impose two consecutive nine-month terms of reimprisonment followed by a period of supervised release.

The district court imposed a term of reimprisonment of nine months on each of the two counts, to run consecutively. Throughout the hearing, the court expressed concern about Zohfeld's history of threatening behavior and the risks he poses to the public. It also lamented the lack of adequate mental health treatment during his first period of incarceration. The court explained that although it would recommend that Zohfeld receive

mental-health treatment during that time, the criminal justice system "can say no more" after it has already tried its best to rehabilitate a defendant. Defense counsel then requested that Zohfeld instead receive an 18-month term on each count to run concurrently, in order to qualify him for good-time credits. The court expressed concern that this alteration might be viewed as a variance from the suggested guidelines range, but acceded to the request because the record would reflect that the departure was made at defense counsel's urging.

The only issue Zohfeld raises on appeal is whether the 18-month term of reimprisonment is plainly unreasonable. *See United States v. Kizeart*, 505 F.3d 672, 673 (7th Cir. 2007). To reach a reasonable term of reimprisonment, the court here was obligated to consider the advisory recommended reimprisonment range in U.S.S.G § 7B1.4(a), which was three to nine months because Zohfeld committed a Grade C violation and had a criminal history category of I.  The court would then have to consider the sentencing factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(e)(3); *United States v. Neal*, 512 F.3d 427, 438-39 (7th Cir. 2008).  Here, the court did so, which was proper.

Zohfeld argues that the term of reimprisonment is plainly unreasonable because the district court imposed a term that was "twice the high end of the advisory guideline range." This argument is disingenuous. In fact, the court initially sentenced Zohfeld to two consecutive terms of nine months, the high end of his guidelines range for each count. A district court has discretion to impose consecutive prison terms upon revoking concurrent terms of supervised release.  *See, e.g., United States v. Deutsch*, 403 F.3d 915, 918 (7th Cir. 2005) (collecting cases). It was only at Zohfeld's request that the court ultimately sentenced him to an 18-month term of reimprisonment on each count to run concurrently.

Zohfeld also argues that the district court acted plainly unreasonably in imposing an "excessive" term of reimprisonment for what he describes as an isolated "administrative" or "technical" violation due to his failure to complete paperwork and cooperate with psychiatric personnel. But Zohfeld is wrong to depict his violation as "not involv[ing] repeated instances" or as being merely "technical." The district court noted that Zohfeld resisted treatment on "an ongoing basis," and it deemed this treatment to be "an extremely important component" of his supervised release. There is nothing "plainly unreasonable" about a district court considering a defendant's pattern of noncompliance with the requirements of supervised release, *see United States v. Carter*, 408 F.3d 852, 854-55 (7th Cir. 2005). Because Zohfeld engaged in a pattern of noncompliance, the district court was not plainly unreasonable in imposing an 18-month term of reimprisonment.

Finally Zohfeld asserts that the district court was plainly unreasonable in concluding that he posed a risk to third parties, arguing that this risk was "entirely speculative" because while on supervised release he did not threaten his former victims or anyone else.

He contends that the term of reimprisonment punishes him for his mental condition. But the court discussed Zohfeld's past "threatening communications and stated intention to carry them out" and explained how these threats required him to be in a "controlled environment," so the court was not plainly unreasonable in concluding that an 18-month term of reimprisonment was needed to protect the public as required by § 3553(a)(2)(C). *See United States v. Pinson*, 542 F.3d 822, 837 (10th Cir. 2008) (upholding above-guideline sentence where the defendant's "very serious threats[] suggest that he might actually harm someone if given the chance"). The court was also concerned with Zohfeld's risk of recidivism, as reflected by its remark that "we don't want to be looking at a calamity in hindsight," and this too was a reasonable consideration under § 3553(a)(2)(C). *See United States v. Padilla*, 618 F.3d 643, 646 (7th Cir. 2010) (concluding that district court did not misapply § 3553(a)(2)(C) in considering the defendant's "high risk of recidivism" to impose an above-guidelines sentence).

AFFIRMED.