In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3748

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES W. SNYDER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:97-cr-00062-01—**George W. Lindberg**, *Judge.*

ARGUED OCTOBER 25, 2010—DECIDED MARCH 18, 2011

Before WOOD, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* James W. Snyder was sentenced to eight years' reimprisonment upon revocation of his supervised release. When the district court imposed Snyder's sentence, it did not acknowledge the advisory range recommended by the United States Sentencing Guidelines. Nor is it clear whether the court considered, as required by 18 U.S.C. § 3553(a)(6), whether the sentence would create unwarranted disparities

among similarly situated defendants. Because we cannot tell whether the court considered the advisory range and the § 3553(a) factors, we vacate Snyder's sentence and remand for resentencing.

## I.  BACKGROUND

In October 1996, Snyder and another man took an eleven-year-old boy to Snyder's house, where they showed the boy pornography and made him drink beer and smoke marijuana. Snyder and his companion then sodomized the boy, forced the boy to perform oral sex on them, and took pictures of themselves engaging in sex acts with the boy. A search of Snyder's house revealed that Snyder had more than 1,000 child pornography pictures on his computer and that he traded pornography with friends online.

Snyder was charged with using a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct in violation of 18 U.S.C. § 2251(a) (Count 1); receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count 2); distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count 3); and possession of child pornography in violation of 18 U.S.C. § 2252(a)(3)(B) (Count 4). After a jury trial, Snyder was convicted of all four counts and was sentenced to 168 months in prison, a six-year term[1] of

---

[1] Both the government and Snyder asserted in their briefs that Snyder was sentenced to four concurrent six-year terms of

(continued...)

supervised release, and a $15,000 fine.

Snyder began serving his term of supervised release on April 16, 2009. On June 17, 2009, at the request of Snyder's probation officer, Snyder's conditions of supervised release were modified to prohibit him from using a computer with access to the internet, to prohibit him from possessing pornography, and to require him to participate in sex-offender treatment.

Unfortunately, Snyder did not comply with the modified conditions. Although he went to sex-offender treatment, he showed such resistance that he was eventually discharged from the program due to non-compliance. He also accessed several pornographic websites depicting older men having sex with younger boys. The websites contained a disclaimer that all participants were over eighteen years of age.

---

[1] (...continued)

supervised release. However, the court's sentencing order stated, "Upon release from reimprisonment, the defendant shall be on supervised release for a term of six (6) years." To determine whether this was a clerical error or whether Snyder was actually sentenced to a single term of six years, we ordered the original sentencing transcript. It turns out that the court sentenced Snyder to only one term of supervised release: "It is ordered that you serve *a term* of supervised release of six years." (emphasis added). This understanding is confirmed by the court's statements during the revocation hearing: "Mr. Snyder was convicted . . . and was sentenced on June 11, 1998 to 168 months imprisonment on each count to run concurrently, *72 months of supervised release*, a $15,000 fine, and a $200 special assessment." (emphasis added).

On September 29, 2009, Snyder's probation officer filed a Special Report recommending that Snyder's supervised release be revoked due to three violations: (1) failure to comply with sex-offender treatment; (2) using a computer to access the internet; and (3) viewing pornography.[2]

At his supervised release revocation hearing, Snyder asked that he be given an opportunity to return to sex offender treatment with a new therapist, attributing his prior recalcitrance to stress and to personal disagreements with his former therapist. Snyder's probation officer recommended nine months per each of the four original convictions, imposed consecutively. The government asked for what it believed to be the statutory maximum of two years per conviction to run consecutively.

---

[2] Snyder argued to the district court that the second and third violations (using a computer to access the internet and viewing pornographic websites) are in reality a single violation. He does not, however, make that argument on appeal. He also does not contend, nor did he argue to the district court, that the conditions were unnecessary or unreasonable. *Compare United States v. Silvious*, 512 F.3d 364, 371 (7th Cir. 2008) (explaining that "a total ban on the use of computers with access to the Internet is in most cases an overbroad condition of supervised release"), *with United States v. Angle*, 598 F.3d 352, 361 (7th Cir. 2010) (finding that it was not an abuse of discretion for the district court to disallow "personal" access to internet services where the defendant had used a computer to commit sex offenses). Therefore, we do not address either of these issues.

The district court imposed eight years. In the court's view, Snyder remained very dangerous to children. According to the court, the conditions Snyder violated were central to the efforts to rehabilitate him and to protect children. Snyder had violated those conditions so soon after his release from prison and after the modification of the terms of his release that the court believed that attempting to supervise Snyder while on release was "a fool's errand." The court concluded that the "safest and most appropriate course" was to incapacitate Snyder for as long as possible. During the hearing, the court made no mention of the advisory range recommended by the Guidelines. Snyder appeals his sentence.

## II. ANALYSIS

Snyder contends that the district court committed procedural error because it did not take into account the advisory range under the Guidelines and did not consider whether imposing an above-Guidelines sentence would create unreasonable disparities among similarly situated defendants. We review the procedures followed by the district court *de novo*. *See United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir. 2009).

As with an initial sentencing decision, when deciding whether to revoke a term of supervised release, the district court must begin its analysis with the recommended imprisonment range found in the Guidelines. *United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008). Although the advisory range "informs rather than

cabins" the court's discretion, the court must neverthe-less take the Guidelines into account. *Id.*

The court must also consider the factors enumerated in 18 U.S.C. § 3553(a): (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to deter future crime, protect the public, and provide the defendant with necessary services such as vocational training and medical care; (4) the Sentencing Commission's recommendations re-garding the sentencing range; (5) the Sentencing Com-mission's policy statements; and (6) the need to avoid unwarranted sentencing disparities. *See United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005). While the court need not make factual findings as to each factor, the record should reveal that the factors were consid-ered. *Neal*, 512 F.3d at 438.

Section 3583(e)(3) provides that a court may revoke a term of supervised release, "and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release . . . except that a defendant whose term is revoked . . . may not be required to serve . . . more than two years in prison if such offense is a class C or D felony." § 3583(e)(3). In 1997, when Snyder was sentenced, all of his convictions were class C felonies.[3] Had Snyder been sentenced to four

---

[3] Offenses with statutory maximums between 10 and 25 years are class C felonies. § 3559(a)(3). In 1997, Snyder's first convic-

(continued...)

terms of supervised release, the maximum statutory sentence the court could have imposed upon revocation would have been two years per conviction that resulted in a term of supervised release, to run consecutively.[4] *See United States v. Deutsch*, 403 F.3d 915, 917 (7th Cir. 2005) (the court can impose consecutive terms upon revocation of concurrent terms of supervised release).

---

[3] (...continued)

tion carried a statutory maximum sentence of 20 years. § 2251(d) (1997). The statutory maximum for his other convictions was 15 years. *See* §§ 2252(a)(2), (a)(3)(B) (1997).

[4] However, because Snyder was sentenced to only "a term" of supervised release, the maximum term of reimprisonment the court could impose under § 3583(e)(3) was 24 months. A defendant cannot be reimprisoned for violating the conditions of non-existent terms of supervised release. *See United States v. Eskridge*, 445 F.3d 930, 935 (7th Cir. 2006) (defendant sentenced to "a term" of supervised release could not be sentenced to consecutive terms of imprisonment after violating the conditions of his release).

We also note that it is odd that the court sentenced Snyder to only one term of supervised release because when Snyder was sentenced the maximum term of supervised release for a Class C felony under § 3583(b) was three years. It may be that the court intended to sentence Snyder to two three-year terms of supervised release or some other combination. However, even if the court meant to sentence Snyder differently, it no longer has the authority to modify the original sentence to correct the error. *See id.* at 934 ("A district judge may still correct a final judgment in a criminal case to reflect the sentence he actually imposed but he cannot change the sentence he did impose even if the sentence was erroneous.").

The recommended range under the Guidelines would have been much lower. There are three grades of supervised release violations under the Guidelines. A Grade C violation encompasses conduct constituting an offense punishable by less than a year or a violation of any other condition of supervised release.[5] U.S.S.G. § 7B1.1(a)(3). There is no dispute that Snyder's violations fall under the "violation of any other condition of supervised release" and are therefore Grade C violations.

The Guidelines range applicable to Grade C violations is three to nine months for an offender who, like Snyder, has a criminal history category of I. U.S.S.G. § 7B1.4(a). In his recommendation, the probation officer assumed that a sentence of nine months for each conviction to be served consecutively, or three years in total, was at the very high end of what the Guidelines recommended for Snyder's violations. The sentence imposed by the court was over two-and-a-half times greater than that.

Although the district court need not explain why a sentence differs from the Sentencing Commission's recommendation as long as the sentence is appropriate under

---

[5] In contrast, Grade A violations involve conduct constituting an offense punishable by more than one year of imprisonment that is: (i) a crime of violence; (ii) a controlled substance offense; (iii) involves possession of a firearm or a destructive device; or an offense punishable by more than 20 years imprisonment. *See* U.S.S.G. § 7B1.1(a)(1). Grade B violations involve conduct constituting an offense punishable by more than one year of imprisonment. *See* U.S.S.G. § 7B1.1(a)(2).

the § 3553(a) factors, the court must still "start by using the Guidelines to provide a benchmark that curtails unwarranted disparities*." United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009). The court "need not accept the Sentencing Commission's penological framework," but it may not ignore the Sentencing Commission's views embodied in the Guidelines. *See United States v. Bartlett*, 567 F.3d 901, 908-09 (7th Cir. 2009). A departure from the Guidelines, especially a significant one, must be carefully explained. *See Gall v. United States*, 552 U.S. 38, 46 (2007). The court here, however, made no reference to the advisory range at all.

Also, we cannot be sure that the court considered whether imposing what it believed to be the harshest possible sentence would lead to unwarranted disparities among similarly situated defendants. The court explained that, in its view, Snyder needed to be sentenced to the maximum term legally permissible because he was dangerous to children, his violations were serious, and they occurred shortly after his release. But these reasons mainly address Snyder's history and characteristics, the nature of his offenses, and the need to deter future crime and protect the public. *See* § 3553(a)(1)-(a)(3). The court never discussed whether Snyder's sentence would create unwarranted sentencing disparities among defendants. *See Bartlett*, 567 F.3d at 907 (explaining that the kind of disparity with which § 3553(a)(6) is concerned is an unjustified difference across judges or districts).

"Whenever a court gives a sentence substantially different from the Guidelines' range, it risks creating unwar-

ranted sentencing disparities, in violation of 18 U.S.C. § 3553(a)(6), for most other [courts] will give sentences closer to the norm." *Kirkpatrick*, 589 F.3d at 415. "[L]eaping close to the statutory maximum creates a risk of unwarranted disparity with how similar offenders fare elsewhere—not only because it may overpunish [a defendant], but because it leaves little room for the marginal deterrence of persons whose additional deeds are more serious . . . ." *Id.* While we do not express an opinion as to whether an above-Guidelines sentence is warranted in this case, the district court could not impose such a sentence without careful consideration of the advisory range and the statutory factors. *See Gall*, 552 U.S. at 50 ("If [the court] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

Had the district court correctly calculated and carefully reviewed the Guidelines range, we would be more confident that it also considered the need to avoid unwarranted disparities. *See id.* at 54 ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). But there is nothing in the record to suggest that the court did either.

The government contends that any error committed by the district court was harmless because the court would have imposed the same sentence regardless. But adopting the government's position in this case would eviscerate the requirement that the district court take the Guidelines into account. A failure to altogether consider the Guidelines is not harmless. *See Gibbs*, 578 F.3d at 695-96 (remanding for resentencing where the district court did not acknowledge the advisory range).

The government also argues that Snyder forfeited his contention that the district court erred because he did not "object" to the sentence imposed. But we have repeatedly held that the rules do not require a defendant to complain about a judicial choice after it has been made so long as the defendant argued for a lower sentence before the court imposed the sentence. *Bartlett*, 567 F.3d at 910; *see also United States v. Paul*, 542 F.3d 596, 599 (7th Cir. 2008). Snyder argued for a lower sentence before the court sentenced him and therefore preserved his options on appeal.

Finally, Snyder also argues on appeal that his sentence is substantively unreasonable. Because we find that the district court did not follow the proper procedure in sentencing Snyder, we will not address whether the sentence is substantively unreasonable. The parties should address on remand the impact of Snyder's original sentence of one six-year term of supervised release in light of § 3583(e)(3).

### III. CONCLUSION

We therefore VACATE Snyder's sentence and REMAND for proceedings consistent with this opinion.